No. 22-16338

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

ANDRE ALMOND DENNISON,
*Plaintiff-Appellant,*

v.

CHARLES L. RYAN, DIRECTOR OF ADOC; ET AL.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Arizona
No. 2:18-cv-04539

_____

**APPELLEE'S ANSWERING BRIEF**

_____

<div style="margin-left:40%">

Kathleen L. Wieneke, AZ Bar #011139
Laura Van Buren, Bar #031669
WIENEKE LAW GROUP, PLC
1225 W. Washington St., Suite 313
Tempe, Arizona 85288
Telephone: (602) 715-1868
kwieneke@wienekelawgroup.com
lvanburen@wienekelawgroup.com

*Attorneys for Defendant-Appellee
Masterson*

</div>

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................. ii

TABLE OF AUTHORITIES ...............................................................v

INTRODUCTION ...........................................................................1

JURISDICTIONAL STATEMENT .....................................................1

ISSUES PRESENTED.......................................................................1

STATEMENT OF THE CASE............................................................2

    I.    THE UNDERLYING INCIDENT ........................................2

        A.    Dennison Is Scheduled for New Identification Photos...............2

        B.    Dennison Resists Being Photographed and Acts Suspiciously ..2

        C.    Masterson Orders a Routine Strip Search...................................3

        D.    Dennison Makes a Phone Call to His Father .............................4

    II.    THE TRIAL .......................................................................5

        A.    The District Court Declines to Subpoena Mangan, Who Resides in New York......................................................................5

        B.    The District Court Excuses a Sleeping Juror on the Second Day of Trial...........................................................................7

        C.    The District Court Excludes Dennison's Statements on the Recorded Phone Call................................................................8

SUMMARY OF THE ARGUMENT .....................................................9

ARGUMENT ...............................................................................11

    I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN EXCUSING THE SLEEPING JUROR .............................................11

A. Standard of Review ...................................................................11

B. *Barrett* Does Not Mandate an Evidentiary Hearing in All Cases ................................................................................................11

C. The District Court Acted Well Within Its Discretion in Dismissing the Sleeping Juror ................................................14

D. The Lack of an Evidentiary Hearing or Further Investigation Was Inconsequential ....................................................................15

II. IT WAS NOT PLAIN ERROR FOR THE DISTRICT COURT TO QUASH THE OUT-OF-STATE SUBPOENA...................................16

A. A Plain Error Standard Applies ..................................................16

B. Mangan Was Outside of the Court's Subpoena Power ............17

C. The Absence of Mangan's Testimony Was Harmless..............19

III. IT WAS NOT PLAIN ERROR TO EXCLUDE DENNISON'S HEARSAY STATEMENTS ...............................................................20

A. A Plain-Error Standard Applies ..................................................20

1. Dennison Did Not Make an Offer of Proof Regarding the Content of the Call...........................................................21

2. Dennison Did Not Argue to the District Court that the Recording Was a Prior Consistent Statement.................22

B. The Recorded Phone Call Does Not Contain Prior Consistent Statements Under Rule 801(d)(1)(B).........................................23

C. Any Error Was Harmless ............................................................26

CONCLUSION ....................................................................................................27

Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6..................28

Form 8. Certificate of Compliance for Briefs............................................................29

iii

CERTIFICATE OF SERVICE .................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Elmer*, 21 F.3d 331 (9th Cir. 1994) .......................................22

*Beachy v. Boise Cascade Corp.*, 191 F.3d 1010 (9th Cir. 1999)............................26

*Castro v. Renteria*, 971 F.3d 882 (9th Cir. 2020) ....................................16

*Claiborne v. Blauser*, 934 F.3d 885 (9th Cir. 2019)................................16

*Donoghue v. County of Orange*, 848 F.2d 926 (9th Cir. 1987)..............................16

*Drayton v. Scallon*, 685 F. App'x 557 (9th Cir. 2017 .............................................26

*Heyne v. Caruso*, 69 F.3d 1475 (9th Cir. 1995) ......................................21

*Hill v. Arnold*, 689 F. App'x 552 (9th Cir. 2017)............................................. 21, 22

*Johnson v. Nicholson*, 349 F. App'x 604 (2d Cir. 2009) .........................................14

*Kaass Law v. Wells Fargo Bank*, 799 F.3d 1290 (9th Cir. 2015)...........................17

*Lam v. City of Los Banos*, 976 F.3d 986 (9th Cir. 2020).......................... 17, 23, 26

*Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012) ..........................11

*Rice v. United States*, 545 U.S. 1136 (2005) ...........................................14

*Tome v. United States*, 513 U.S. 150 (1995)............................................ 24, 25

*United States v. Baker*, 58 F.4th 1109 (9th Cir. 2023) ...........................................20

*United States v. Barrett*, 703 F.2d 1076 (9th Cir. 1982) .................... 11, 12, 13, 15

*United States v. Bishop*, 291 F.3d 1100 (9th Cir. 2002)........................................21

*United States v. Brewer*, 776 F. App'x 442 (9th Cir. 2019)....................... 11, 12, 13

*United States v. Catalan-Roman*, 585 F.3d 453 (1st Cir. 2009)............................16

*United States v. Collicott*, 92 F. 3d 973 (9th Cir. 1996).........................................25

*United States v. Freitag*, 230 F.3d 1019 (7th Cir. 2000).........................................14

*United States v. Hayat*, 710 F.3d 875 (9th Cir. 2013) .................................... 21, 22

*United States v. Lara-Hernandez*, 588 F.2d 272 (9th Cir. 1978) ...........................23

*United States v. Lynch*, 903 F.3d 1061 (9th Cir. 2018) ................................... 25, 26

*United States v. Olano*, 507 U.S. 725 (1993) ...........................................16

*United States v. Polizzi*, 801 F.2d 1543 (9th Cir. 1986) ..........................................16

*United States v. Sims*, 617 F.2d 1371 (9th Cir. 1980) ...........................................22

*United States v. Upshaw*, 114 F. App'x 692 (6th Cir. 2004)...................................14

*United States v. Wilcox*, 50 F.3d 600 (8th Cir. 1995)...........................................14

*United States v. Wiley*, No. 21-4184, 2022 WL 2901728 (4th Cir. July 22, 2022).14

*United States v. Young*, 470 U.S. 1 (1985) ............................................16

**Rules**

Fed. R. Civ. P. 45 .............................................................................. passim

Fed. R. Evid. 103 ...........................................................................21

Fed. R. Evid. 801 .................................................................. 9, 10, 20, 23

Fed. R. Evid. 803 ..............................................................................9

Fed. R. Evid. 807 ..............................................................................9

**Other Authorities**

1 Mueller & L. Kirkpatrick, *Federal Evidence* (4th ed. 2013)...............................23

Robert P. Mosteller et al., *McCormick on Evidence* (8th ed. 2020)........................23

**INTRODUCTION**

After a four-day trial on Appellant Andre Dennison's Fourth and Eighth Amendment claims against Appellee Todd Masterson—a sergeant with the Arizona Department of Corrections, Rehabilitation and Reentry—a jury returned a verdict in Masterson's favor after 20 minutes of deliberation. Dennison now seeks to overturn that verdict, but his arguments fall far short of the high burdens he must meet to prevail. First, the district court did not abuse its discretion in excusing a juror who it observed to be "nodding off" three times and "flat out sleeping" twice on the very first afternoon of trial. Second, it did not commit plain error in quashing a subpoena directed to a witness outside the geographic limits of Federal Rule of Civil Procedure 45—an argument Dennison makes for the first time on appeal. Third, the district court did not commit plain error in refusing to admit hearsay statements made after the incident in question and after Dennison had motive to fabricate his story. This Court should affirm the judgment.

**JURISDICTIONAL STATEMENT**

Masterson agrees with the jurisdictional statement set forth in Dennison's Opening Brief.

**ISSUES PRESENTED**

1. Did the district court abuse its discretion in excusing a juror who was repeatedly sleeping and nodding off during the first afternoon of trial?

1

2.    Did the district court commit plain error in quashing a subpoena for a witness who resides outside the geographical limits of its authority?

3.    Did the district court commit plain error in excluding the hearsay statements contained in a phone call recording?

## STATEMENT OF THE CASE

### I.    THE UNDERLYING INCIDENT

#### A.    Dennison Is Scheduled for New Identification Photos

On June 12, 2016, Correctional Sergeant Steber handed Correctional Officer Kriebel a computer-generated list of inmates and told him to take four photographs of each individual listed: a front shot, a right profile, a left profile, and a full body photograph. [3-ER-350, 355.] The photos—known as five-year update photos— were to be used for inmate identification cards, escape fliers, and for the inmate accountability office. [3-ER-351.]

The list that Kriebel worked from was stipulated into evidence and was shown to the jury. [2-ER-178; 3-ER-352.] As the document shows (and as Kriebel testified), Dennison's name was on that list. [SER-004; 3-ER-355.] The list reflects that it had been more than five years since Dennison's photos had been taken. [SER-004; 3-ER-356.]

#### B.    Dennison Resists Being Photographed and Acts Suspiciously

When Kriebel went to get Dennison for his photos, Dennison argued that he should not be scheduled for new photos.  [3-ER-361.] He allowed Kriebel to take

2

the three profile shots, but when Kriebel turned the camera sideways to take the full-body shot, Dennison objected. [3-ER-362.] He was adamant that he would not allow Kriebel to take his photo. [3-ER-363.] Kriebel radioed his supervisor, who instructed him to restrain Dennison and escort him to the "captain's area" of the administrative building. [3-ER-363.]

At the administrative building, Officer Kriebel and Dennison were met by Sergeant Steber and Defendant Masterson (also a sergeant). [3-ER-365.] Dennison continued to refuse the full-body photograph and became agitated. [3-ER-366; 4-ER-448] He was clenching and unclenching his fists and his body was tense. [*Id.*] As Kriebel testified, that kind of behavior from an inmate "generally means something bad is going to happen," such as the inmate becoming combative or assaultive. [3-ER-366–67.]

### C.    Masterson Orders a Routine Strip Search

Sergeant Masterson then ordered and conducted a visual strip search. [3-ER-367; 4-ER-449.] It occurred in a private restroom down a hallway, where such searches were commonly conducted. [3-ER-368.] According to Kriebel, the restroom "provided some degree of privacy to the inmate being searched, while also providing enough security for the staff that were observing the strip search." [3-ER-370–71.] No other inmates or female staff members were present at the time. [3-ER-371.]

3

Kriebel—who was standing around the corner during the search—heard Masterson give commands to Dennison. [3-ER-371, 372.] Everything he heard was compliant with a proper strip search. [3-ER-373.] Steber stood just outside of the restroom, where he could actually see and hear Masterson. [4-ER-451.] He did not see Masterson touch Dennison at any time during the visual strip search, nor did he hear Masterson laugh or make any inappropriate jokes or comments. [4-ER-45.] Indeed, Masterson never crossed the threshold of the bathroom doorway while he was conducting the visual strip search. [4-ER-552.] He never touched Dennison's chest or breast. [4-ER-555.]

After the search, when Dennison was fully dressed, Kriebel again tried to take the required full-body photograph. [3-ER-372.] Dennison "scrunched up his face and made it so that it would not be a usable photograph." [3-ER-372–73.] Kriebel prepared both an information report regarding the incident and a disciplinary ticket for Dennison for hindering staff. [3-ER-379.]

### D.   Dennison Makes a Phone Call to His Father

After this incident, Dennison made a phone call to his father. [5-ER-693.] He testified that he made the call when he "was first allowed to go and approach a telephone." [5-ER-798.] The record does not reflect what time the call was made, or what was said by either individual—only Dennison's representation that he "explained to [his dad] all the situation." [5-ER-798.]

4

## II.    THE TRIAL

### A.    The District Court Declines to Subpoena Mangan, Who Resides in New York

In the months before trial, Dennison sought to subpoena current and former correctional officers, including Raymond Mangan. At the July 19, 2022 pretrial conference, defense counsel informed Dennison and the court that Mangan lived in New York and could not be subpoenaed. [2-ER-167.] Counsel further noted that Mangan "has no memory of this incident." [2-ER-168.] Dennison did not challenge either statement. The court then asked defense counsel for "some kind of document that reflects what his testimony would be if called as a witness." *Id.*

Masterson then moved to quash the subpoena, repeating the argument that Mangan, a resident of New York, was beyond the reach of the court's authority to compel his attendance at trial under Fed. R. Civ. P. 45.[1] [2-ER-36–42.] In response to the court's specific request, Masterson noted that "Mangan has no testimony to offer the jury . . . because he does not remember anything." [2-ER-42.]

Dennison failed to file a timely response, and the district court granted the motion to quash. [2-ER-28–33.] It noted that "Rule 45 . . . provides that '[o]n timely motion, the court for the district where compliance is required *must* quash' a subpoena that requires a person to comply beyond the geographic limits of Rule

---

[1] Masterson also argued that Dennison's pretrial disclosures of Mangan violated Rule 37 and were unduly burdensome. [2-ER-39–42.]

45(c)," defined as more than 100 miles from where the witness resides, is employed, or regularly conducts business. [2-ER-28–29.] The court cited the uncontroverted evidence provided by Masterson that Mangan lived and works in New York. [2-ER-29.] The court stated:

> Therefore, given that the trial in this matter is well over 100 miles from Mr. Mangan's residence in New York, and given that Mr. Mangan is no longer a resident of, employed in, or regularly transacts business in person in Arizona, he is outside the geographical limitations set forth in Rule 45(c). Pursuant to Rule 45(d)(3)(A)(ii), this Court must quash Plaintiff's subpoena for Mr. Mangan. Defendant's first Motion to Quash (Doc. 239) is granted.

[2-ER-29.]

Only after the court had ruled did Dennison file a response. [2-ER-8–12.] He argued that the motion to quash was premature and moot because Mangan had not yet been served. [2-ER-8.] He also urged the court to modify the subpoena to allow a telephonic appearance. [2-ER-9.] He did not challenge Masterson's standing to file the motion. [2-ER-8–12.]

The issue of the Mangan subpoena arose one more time during trial. The court allowed Dennison to make any further record he wished. [3-ER-322.] Dennison simply said, "[j]udge, I do raise an objection for Mr. Mangan not being allowed to testify. I believe that I raised all of the correct standards for him to be able to—to appear telephonically at least." [3-ER-324–25.] Once again, Dennison did not raise any issues of standing. [*Id.*] The court overruled Dennison's

6

objection. [3-ER-325.] As part of the same discussion, Masterson's counsel noted that, while she had addressed Mangan's lack of memory in the motion to quash, she had not submitted a declaration from him because "I cannot compel the witness to submit a written declaration. He's not in my control." [2-ER-323–24.]

## B. The District Court Excuses a Sleeping Juror on the Second Day of Trial

Masterson attempted to use a good-faith, race-neutral peremptory strike on Juror No. 11, but the district court refused and seated him on the jury. [3-ER-265–67.] Opening statements were completed that same afternoon. [3-ER-284–300.] The next morning, the district court called that same juror—renumbered by then to be Juror No. 4—into the courtroom outside the presence of the other jurors. [3-ER-328.] The court addressed the juror, stating, "[y]esterday afternoon, I noticed on three occasions that you were nodding off in your chair, and on two occasions, I noticed you were flat out sleeping." [*Id.*] The court expressly noted that the juror's head was "bobbing." [3-ER-329.] The juror denied sleeping, but the court was adamant about its observations: "I watched you sleeping. . . . You may say you weren't sleeping. I saw you sleeping in the jury box." [3-ER-328–29.] The court excused the juror. [3-ER-330.]

When Dennison was given a chance to speak on the record, he did not dispute that the juror had been sleeping. He simply said, "[h]e is the sole and only African American juror, which now there are none. And I think he would have

7

been completely unbiased, and he would have been a good juror." [*Id.*] Dennison did not ask the court to conduct any further investigation or inquiry into the matter. *Id.*

### C. The District Court Excludes Dennison's Statements on the Recorded Phone Call

During his testimony, Dennison testified that after the incident, "I went, and I made a phone call. I called my dad." [5-ER-693.] Masterson objected to any testimony regarding the contents of the call. [*Id.*] The court stated, "[i]f you plan to place on the record what you talked about with your dad, it is hearsay. And the objection will be sustained." [*Id.*] Dennison said that he was not planning to so testify, but rather, "I was just saying I called my dad and I am leaving it at that." [5-ER-694.] He did not say he was offering the conversation as a prior consistent statement. [*Id.*]

During Dennison's cross-examination, Masterson used a transcript of that phone call to refresh Dennison's recollection that at the beginning of all outgoing prison phone calls, an automatic recording advised inmates that if they had been a victim of sexual assault, they could leave a message on the Prison Rape Elimination Act hotline. [5-ER-720–23, 793.] Masterson did not read any portion of the transcript to the jury, and the transcript was not entered into evidence. [*Id.*] Masterson did not ask any questions about any statements made by Dennison or his father. [*Id.*]

When Dennison took the stand on redirect, he sought to admit the phone call itself. [5-ER-792–93.] He repeated that after the incident, "I called home and talked to my dad and told him about it." [5-ER-793.] Dennison asked for the court to consider admission of the call under Federal Rule of Evidence 803 as a present-sense impression or excited utterance, or under Rule 807 (the residual exception). [*Id.*] The court then allowed Dennison to retake the stand and attempt to lay foundation for admitting the call. [5-ER-797.] He then testified that "I called my dad and explained to him all the situation." [5-ER-798.] Masterson made the same objections, and Dennison raised the same arguments: present-sense impression, excited utterance, and the residual exception of Rule 807. [5-ER-800.] Once again, he did not argue that the call contained a prior consistent statement or was otherwise non-hearsay under Rule 801. [*Id.*] The court sustained Masterson's objection, finding that the recording "would be hearsay without any exception and lacks proper foundation." [*Id.*]

The jury later returned a complete defense verdict [2-ER-6], and this appeal followed.

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion in excusing a juror who it observed "nodding off" three times and "flat out sleeping" twice in the first afternoon of trial. Caselaw is clear that trial courts have discretion in deciding how

to handle sleeping jurors, including the discretion to remove a sleeping juror from the panel. And, contrary to Dennison's assertion, this Court does not require a trial court to conduct an investigation or evidentiary hearing when it actually observes a juror sleeping.

As to Dennison's argument regarding the Mangan subpoena, a plain error standard applies, as Dennison never challenged Masterson's standing to move to quash that subpoena. The district court did not commit plain error because Mangan—who undisputably lived in New York at the time of trial—was outside the bounds for trial subpoenas set forth in Federal Rule of Civil Procedure 45. And even if the subpoena was quashed in error, Dennison was not prejudiced because the proffered testimony—that Mangan would say that Dennison was not due for his five-year photos—is directly contradicted by not only the testimony of Steber and Kriebel (who were actually working on the photo assignment, unlike Mangan), but also by the actual list of inmates due for photos that included Dennison's name. Further, Mangan's belief about whether Dennison was due for photo updates is not relevant to the actual claims in this case—that Masterson sexually assaulted Dennison or conducted an unlawful strip search.

Finally, Dennison argues for the first time on appeal that his recorded phone call to his father should have been admitted as a prior consistent statement under Federal Rule of Evidence 801(d)(1)(D). It was not plain error to exclude the call

because Dennison's motive to fabricate the statement had already arisen at the time of the call. Further, this Court cannot consider the substance of this argument—including whether there was any prejudice to Dennison—because the record does not reflect what exactly was said in the call, as Dennison never made an offer of proof.

## ARGUMENT

## I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN EXCUSING THE SLEEPING JUROR

### A. Standard of Review

This Court "review[s] a district court's handling of sleeping juror allegations for abuse of discretion." *United States v. Brewer*, 776 F. App'x 442, 443 (9th Cir. 2019) (citing *United States v. Barrett*, 703 F.2d 1076, 1083 (9th Cir. 1982)).

"Abuse-of-discretion review is highly deferential to the district court." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012). Under the standard, this Court reverses only when it is "convinced that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Id.*

### B. *Barrett* Does Not Mandate an Evidentiary Hearing in All Cases

Dennison argues that the district court abused its discretion by not conducting an evidentiary hearing or some other investigation regarding whether the juror was sleeping. (Op. Br. at 38–42.) He argues that *Barrett* is controlling and requires such an investigation. (*Id.*) This is incorrect.

11

The factual differences between *Barrett* and this case are significant. In *Barrett*, a juror admitted to sleeping during the trial and asked to be removed from the jury. *Id.* at 1082. The criminal defendant also asked that the juror be removed, but the prosecution opposed the request. *Id.* The district court declined to remove the juror, and after a guilty verdict, said "[o]n the matter of the juror, there was no juror asleep during this trial. I watch the jurors constantly." *Id.*

On appeal, this Court distinguished that case—where the juror had *admitted* to sleeping—from others in which parties had accused jurors of sleeping. *Id.* at 1083. After drawing that distinction, it stated, "[w]e do not believe, however, that *under the particular circumstances of this case*, the trial judge could properly take judicial notice of the fact that 'there was no juror asleep during this trial' without making further inquiry into the matter." *Id.* (emphasis added). It then remanded the case with instructions that the trial judge "conduct a hearing to determine whether the juror in fact was sleeping during trial and, if so, whether the juror's being asleep prejudiced Barrett to the extent that he did not receive a fair trial." *Id.* at 1083.

This Court later discussed and expanded upon *Barrett* in *United States v. Brewer,* 776 F. App'x 442 (9th Cir. 2019). There, the Court noted that a criminal defendant's constitutional rights are violated when "a sleeping juror misses essential portions of the trial or is otherwise unable to fairly deliberate on the

defendant's guilt." *Id.* at 443. In other words, by allowing a juror who had admitted to sleeping to stay on Barrett's jury, the trial court potentially violated his rights. Likewise, the *Brewer* Court criticized the district court, which had been presented with an uncontroverted assertion that a juror slept through instructions but then refused to remove the juror or to conduct any further inquiry. *Id.* This is not what happened here, where the district court *removed* the juror whom the judge actually saw sleeping.

The differences between this case, on the one hand, and *Barrett* and *Brewer*, on the other, are immediately apparent. In those cases, the judges claimed not to have seen the jurors in the act of sleeping. This Court was concerned that the judges might—despite their professed vigilance—have missed the event(s). After all, trial judges have to pay attention to numerous things during the course of a trial, and these judges might have missed something. Given that possibility, the judges should have been open to information from other actors in the trial who might have seen what the judges missed.

Here, by contrast, the judge did not need help from other actors. He *actually saw* the juror failing to pay attention—nodding off or full-on sleeping—several times. The judge did not miss the event, and therefore did not need a hearing or other inquiry to ascertain the facts.

13

### C. The District Court Acted Well Within Its Discretion in Dismissing the Sleeping Juror

Dennison does not cite any Ninth Circuit precedent holding that a trial court abuses its discretion by *removing* a sleeping juror. And courts across the country have made clear that trial judges have "considerable discretion in deciding how to handle a sleeping juror." *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000) (citing *United States v. Wilcox*, 50 F.3d 600, 603 (8th Cir. 1995)). It is within a court's discretion to remove a sleeping juror. *United States v. Upshaw*, 114 F. App'x 692, 711 (6th Cir. 2004), *vacated on other ground sub nom. Rice v. United States*, 545 U.S. 1136 (2005). "If sleep by a juror makes it impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial, the sleeping juror should be removed from the jury." *Freitag*, 230 F.3d at 1023. *See also United States v. Wiley*, No. 21-4184, 2022 WL 2901728, at *3 (4th Cir. July 22, 2022) (citing *Freitag* and concluding that a district court does not abuse its discretion in removing a sleeping juror); *Johnson v. Nicholson*, 349 F. App'x 604, 606 (2d Cir. 2009) (same).

Here, where the trial judge personally witnessed the juror repeatedly nodding off and sleeping, it was well within the court's considerable discretion to remove that juror to ensure that both parties had a fair trial, judged by jurors who could perform their duties.

14

**D.      The Lack of an Evidentiary Hearing or Further Investigation Was Inconsequential**

The evidentiary hearing and/or investigation that Dennison espouses (Op. Br. at 38–42) was unnecessary and would have done nothing to clarify the situation here. The court personally witnessed the juror's behavior. It noted that behavior on the record. It heard the juror's protests that he was not sleeping but rejected them with good cause; after all, it actually witnessed him sleeping. What, then, would be the purpose of the hearing or investigation that Dennison advocates? At most, others in the courtroom could have stated whether or not they had *noticed* the juror sleeping *at any particular time*. If they did not, it could simply mean that they were not constantly watching this one particular juror (presumably because they were focused on other aspects of the trial). This stands in contrast with *Barrett*, where the judge did not see the crucial event and an evidentiary hearing therefore could have aided the court.

The district court in this case made its own observations, and it heard the juror's denial. It evidently found its own observations more persuasive than the juror's denials, as it had the discretion to do. There is no reason to believe that hearing from other individuals who might not have seen the juror sleeping at a particular moment in time would have persuaded the court to exercise its discretion differently. The absence of an evidentiary hearing or further investigation or inquiry was ultimately inconsequential.

15

## II.    IT WAS NOT PLAIN ERROR FOR THE DISTRICT COURT TO QUASH THE OUT-OF-STATE SUBPOENA

### A.    A Plain Error Standard Applies

The grant or denial of a motion to quash a subpoena is generally reviewed for abuse of discretion. *United States v. Polizzi*, 801 F.2d 1543, 1551 (9th Cir. 1986). "Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge." *Donoghue v. County of Orange*, 848 F.2d 926, 931 (9th Cir. 1987). But an even more stringent standard applies here.

When a party raises an argument for the first time on appeal, a plain-error standard applies. *Castro v. Renteria*, 971 F.3d 882, 890 (9th Cir. 2020); *see also United States v. Catalan-Roman*, 585 F.3d 453, 463 n.8 (1st Cir. 2009) (when a specific argument is not raised in response to a motion to quash in the trial court, the appellate court reviews for plain error). This rule applies to pro se litigants like Dennison. *Claiborne v. Blauser*, 934 F.3d 885, 894 (9th Cir. 2019).

To prevail on plain-error review, a party must show (1) error, (2) that was plain, (3) that affected his substantial rights, and (4) that seriously affected the "fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). Stated differently, "[p]lain error requires an error that is plain or obvious and that it is so prejudicial that it affects the party's substantial rights such that

16

review is necessary to prevent a miscarriage of justice." *Lam v. City of Los Banos*, 976 F.3d 986, 1006 (9th Cir. 2020).

Here, because Dennison did not challenge Masterson's standing to quash the subpoena below, the plain-error standard applies. He did not raise the issue at the final pre-trial conference, when defense counsel argued that the court could not subpoena Mangan under Rule 45. [2-ER-167–68.] He did not raise it in his opposition to Masterson's motion to quash. [2-ER-8–12.] And he did not raise it when the district court gave him one final chance to make his record during trial. [3-ER-324–25.] In short, he raises the argument for the first time on appeal.[2]

### B. Mangan Was Outside of the Court's Subpoena Power

It was not plain error for the district court to quash the subpoena. In, fact, under the circumstances, quashal was appropriate under Federal Rule of Civil Procedure 45, which provides that "[o]n timely motion, the court for the district where compliance is required must quash . . . a subpoena that . . . requires a person to comply beyond the geographical limits specified in Rule 45(c)." *See* Fed. R. Civ. P. 45(d)(3)(A). Rule 45(c)'s geographic limits provide that:

---

[2] His failure to raise this argument below matters. Had Masterson known that Dennison would later challenge his standing, he could have communicated to Mangan that he (Mangan) needed to file his own motion to quash, thus potentially circumventing this entire issue. This is *not* a situation in which plain-error review should be rejected on the basis that "the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *Kaass Law v. Wells Fargo Bank, Nat'l Ass'n*, 799 F.3d 1290, 1293 (9th Cir. 2015).

A subpoena may command a person to attend a trial . . . only as follows:

> (A) *Within 100 miles* of where the person resides, is employed, or regularly transacts business in person; or

> (B) Within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer or (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c)(1) (emphasis added).

The record is uncontroverted that at the time of trial Mangan lived in New York, well outside of the 100-mile limit for an enforceable subpoena. As the district court correctly found:

> [G]iven that the trial in this matter is well over 100 miles from Mr. Mangan's residence in New York, and given that Mr. Mangan is no longer a resident of, employed in, or regularly transacts business in person in Arizona, he is outside the geographical limitations set forth in Rule 45(c). Pursuant to Rule 45(d)(3)(A)(ii), this Court must quash Plaintiff's subpoena for Mr. Mangan.

[2-ER-29.]

Given this black-letter law, and given the fact that Dennison never disputed that Mangan did, in fact, live and work in New York, it was not plain error for the district court to quash the subpoena.

18

### C.    The Absence of Mangan's Testimony Was Harmless

Even if Mangan did have a memory of this incident,[3] and even if that memory supported what Dennison said it would, it would not have altered the course of the case for two reasons. Dennison asserted that Mangan agreed with him on the day of the incident that his photos did not need to be retaken. [2-ER-132; 2-ER-72.] But the evidence showed that Kriebel was working from a computer-generated list of inmates he needed to photograph. [3-ER-350, 355.] He received that list from Steber—not from Mangan. [*Id.*] That list plainly shows Dennison's name, and it shows that his photographs had last been taken on December 18, 2010—more than five years prior. [SER-004.] The jury heard from both Kriebel and Steber about the generation of the list and about Dennison's place on it, and it also viewed the list itself. The evidence was overwhelming—Dennison was scheduled to have his five-year photos taken. At most, Mangan's testimony would have cast some doubt on whether the list mistakenly included Dennison's name. That is a minor issue at best, as there is no evidence that Masterson was responsible for the discrepancy, let alone that he used it as a pretense to order that Dennison be strip-searched.

Further, it is undisputed that Mangan was *not* present when Masterson observed Dennison's suspicious behavior in the administrative building that

---

[3] As Masterson repeatedly pointed out, Mangan had no memory of the incident in question, which occurred *six years* before the trial. [2-ER-42.]

prompted him to conduct the visual strip search; nor was Mangan present for the search itself. Therefore, any testimony from Mangan could not have made it more or less likely that Masterson was justified in conducting the search based on the suspicious behavior that *he witnessed* in the administrative building. Any such testimony would also not make it more or less likely that Masterson sexually assaulted Dennison by grabbing his breast.

The absence of any testimony from Mangan—even if it was improperly excluded—was ultimately harmless. It certainly did not rise to the level of seriously affecting the "fairness, integrity or public reputation of judicial proceedings" necessary to justify reversal under plain error review. *Olano*, 507 U.S. at 732.

## III. IT WAS NOT PLAIN ERROR TO EXCLUDE DENNISON'S HEARSAY STATEMENTS

### A. A Plain-Error Standard Applies

This Court reviews "unpreserved challenges to evidentiary rulings for plain error." *United States v. Baker*, 58 F.4th 1109, 1124 (9th Cir. 2023). The plain-error standard applies here because (1) Dennison did not make an offer of proof regarding the contents of the phone recording and (2) he did not raise his current argument regarding Federal Rule of Evidence 801(d)(1)(B) (prior consistent statements) in the district court.

20

### 1.  Dennison Did Not Make an Offer of Proof Regarding the Content of the Call

A party may challenge a ruling to exclude evidence only if the party "informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Fed. R. Evid. 103(a)(2). Thus, "an offer of proof is a prerequisite to challenging excluded evidence." *United States v. Hayat*, 710 F.3d 875, 894 (9th Cir. 2013). "A proper offer of proof informs the trial court of what counsel expects to prove by the excluded evidence and preserves the record so that an appellate court can review the trial court's decision for reversible error." *Heyne v. Caruso*, 69 F.3d 1475, 1481 (9th Cir. 1995).  In the absence of an offer of proof, reversal will lie only when there is plain error. *See United States v. Bishop*, 291 F.3d 1100, 1108 (9th Cir. 2002).

Dennison's generalized testimony regarding the phone call—that he "explained to [his dad] all the situation" [5-ER-798]—is not an adequate offer of proof. The case *Hill v. Arnold*, 689 F. App'x 552 (9th Cir. 2017) is instructive and persuasive here. There, an inmate appealed the trial court's exclusion of grievances alleging separate instances of excessive force against the defendants. *Id.* at 553. The inmate acknowledged that he had failed to make an offer of proof regarding the grievances, but he argued that his failure should be excused "because the substance of the inmate grievances was sufficiently obvious." *Id.* This Court disagreed, noting that the inmate "did nothing more than reference the existence of

21

inmate grievances against Defendants without providing any detail." *Id.* The Court stated that "[w]ithout a more specific description, or an offer of proof, both the district court and this Court are left in the dark and cannot adequately assess the admissibility of these inmate grievances." *Id.*

Such is the case here. The record is devoid of what Dennison actually said on that phone call. Without such evidence—which Dennison should have provided through an offer of proof—this Court is left in the dark, and it cannot adequately asses the admissibility of the phone call.

### 2. Dennison Did Not Argue to the District Court that the Recording Was a Prior Consistent Statement

This Court also applies a plain-error standard when "the proffered grounds on appeal for admitting the statement were not raised at trial." *Hayat*, 710 F.3d at 893.[4] Stated differently, "[i]f a party fails to state the specific grounds upon which evidence is admissible, the issue is not preserved for review, and the court of appeals will reverse only for plain error." *Arizona v. Elmer*, 21 F.3d 331, 334 (9th Cir. 1994); *see also United States v. Sims*, 617 F.2d 1371, 1377 (9th Cir. 1980) ("The presentation of additional evidentiary theories on appeal is inconsistent 'with the salutary purpose of the timeliness requirement to allow the trial judge to make an informed ruling based on the issues as framed by the parties before the evidence

---

[4] While *Hayat* is a criminal case, the court specifically noted that the standard for challenges to evidentiary rulings are the same in criminal and civil contexts. *Id.* at 894.

is . . . excluded.'" (quoting *United States v. Lara-Hernandez*, 588 F.2d 272, 274 (9th Cir. 1978))); Robert P. Mosteller et al., *McCormick on Evidence* § 51 (8th ed. 2020) ("If the proponent counsel specifies a purpose for which the proposed evidence is inadmissible and the judge excludes, counsel cannot complain of the ruling on appeal although the evidence could have been admitted for another purpose.").

Dennison never argued that the phone call contained prior consistent statements, or that it was otherwise non-hearsay under Rule 801. For this additional reason, plain-error standard applies.

### B. The Recorded Phone Call Does Not Contain Prior Consistent Statements Under Rule 801(d)(1)(B)

"[A]ppellate decisions reversing a judgment in a civil case for plain error in applying Rules of Evidence are very rare." *Lam*, 976 F.3d at 1006 (brackets in original) (quoting 1 C. Mueller & L. Kirkpatrick, *Federal Evidence* § 1:22 (4th ed. 2013)). This is not one of those "very rare" cases.

Rule 801(d) provides that the following is *not* hearsay:

> (1) A Declarant-Witness's Prior Statement. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
>
> ….
>
> > (B) *is consistent with the declarant's testimony* and is offered:
>
> ….

23

> (i) to *rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying*; or
>
> (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground.

Fed. R. Evid. 801(d)(1) (emphasis added).

Here, it was not error, let alone plain error, to exclude the call because Dennison gave the district court no reason to believe that the call was consistent with his testimony; all Dennison offered to the court was that in the call he "explained to [his dad] all the situation" [5-ER-798]. The district court would have been required both to assume that Dennison was making a Rule 801(d)(1) argument and then to speculate that the statement would be consistent—something it is not required to do.

Further, the phone recording was not admissible under the rule because the call was not made until *after* the motive to fabricate had arisen. "The Rules do not accord . . . . weighty, nonhearsay status to all prior consistent statements." *Tome v. United States*, 513 U.S. 150, 157 (1995). As the Supreme Court has stated, "[p]rior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited . . . . The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told." *Id.* at 157–58 (1995). Specifically, "[t]o be a prior consistent statement,

24

a statement must occur *before* a motivation to fabricate arises." *United States v. Lynch*, 903 F.3d 1061, 1070 (9th Cir. 2018) (emphasis added) (citing *Tome*, 513 U.S. at 156). A motive to fabricate exists "when such statements are inherently self-serving." *Id.* (internal quotations omitted). "[T]here must be an express or implied charge of *recent* fabrication or improper influence or motive of the declarant's testimony," and "the prior consistent statement must be made prior to the time that the supposed motive to falsify arose." *United States v. Collicott*, 92 F. 3d 973, 979 (9th Cir. 1996) (emphasis added) (concluding that declarant's motive to fabricate would have existed from the moment she was stopped by the police).

Here, if Dennison had a desire to be moved to a private prison—as Masterson argued at trial—then that motive arose as soon as he had been returned to the public prison.[5] At the latest, Dennison's motive to fabricate arose when he repeatedly refused lawful orders to be photographed. It did *not* arise—as Dennison asserts—12 days later, when he filed his written administrative complaint. (Op. Br. at 32.) By the time Dennison called his father on a recorded prison phone line, he was already "strongly incentivized" to misrepresent both his interaction with Masterson and his corresponding refusal to obey lawful orders, in order to get moved. *United States v. Lynch*, 903 F.3d 1061, 1070 (9th Cir. 2018). "Because

---

[5] As to the statements regarding Dennison's "body image," even if those can be construed as a "motive to fabricate," that motive also existed before Dennison's call to his father, when he repeatedly and bafflingly refused to consent to a simple, full-body photograph.

25

[his] motivation remained the same from when he made the statements . . . to his testimony at trial . . . the fact that [he] has consistently told the same story was not ultimately probative of his veracity." *Id.* at 1071.

Just as this Court determined in *Lynch*, the district court here did not err in excluding the prior statements. The exclusion certainly does not rise to the level of plain error.

### C.    Any Error Was Harmless

If this Court determines that the district court made a mistaken evidentiary ruling, it must then determine whether it was a harmless error. "Even if the district court commits error, '[i]f the jury more probably than not would have reached the same result absent the error, the error is harmless and the party's substantial rights have not been affected.'" *Drayton v. Scallon*, 685 F. App'x 557, 559 (9th Cir. 2017) (brackets in original) (quoting *Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1016 (9th Cir. 1999)). When a jury's conclusion is "amply supported" by evidence in the record, an evidentiary ruling does not "constitute a miscarriage of justice seriously impairing the fairness, integrity or public reputation of the judicial proceeding." *Lam*, 976 F.3d at 1007.

Here, the record is silent as to what the audio would have revealed, and therefore, whether its exclusion was prejudicial. Even if Dennison told his father the same story that he told the jury, the jury's ruling was "amply supported by the

record," *Lam*, 976 F.3d at 1007, and the jury more probably than not would have reached the same result. Reversal is not warranted.

## CONCLUSION

The Court should affirm the Judgment.

Date: July 19, 2024

WIENEKE LAW GROUP, PLC

*/s/ Laura Van Buren*
Kathleen L. Wieneke
Laura Van Buren

*Attorneys for Defendant-Appellee Masterson*

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number: 23-1944**

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** */s/ Laura Van Buren*            **Date** July 19, 2024

28

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number: 23-1944**

I am the attorney or self-represented party.

**This brief contains** 6,262 **words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P.
   29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because
   *(select only one)*:
      [  ] it is a joint brief submitted by separately represented parties;
      [  ] a party or parties are filing a single brief in response to multiple briefs; or
      [  ] a party or parties are filing a single brief in response to a longer joint
      brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Laura Van Buren* _____ Date July 19, 2024 _____

**CERTIFICATE OF SERVICE**

I certify that on July 19, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


Date: July 19, 2024

WIENEKE LAW GROUP, PLC

*/s/ Laura Van Buren*
Kathleen L. Wieneke
Laura Van Buren

*Attorneys for Defendant-Appellee Masterson*